UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH OZUA,<br><br>　　　　　　　　Petitioner,<br><br>v.<br><br>JOHN SUTTON, Warden,<br><br>　　　　　　　　Respondent. | Case No.: 16cv2491-CAB (NLS)<br><br>**1)  ORDER GRANTING RESPONDENT'S MOTION FOR LEAVE TO ASSERT PROCEDURAL DEFAULTS IN THE ANSWER [Dkt. No. 11]; and**<br><br>**2)  REPORT AND RECOMMENDATION FOR ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [Dkt. No. 1].** |

　　　Petitioner Kenneth Ozua is a state prisoner proceeding pro se and in forma pauperis with a Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  Petitioner challenges the sentence imposed following his San Diego Superior Court conviction, obtained as a result of a guilty plea, for second degree attempted murder with an enhancement for the personal use of a firearm causing great bodily injury.  (Pet. at 1-2.)  He received a stipulated sentence of 7 years-to-life on the attempted murder count and a consecutive term of 25 years-to-life for the enhancement.  (Id.)  He claims that because the gang involvement element of the enhancement was not pled or proved, his plea was not

knowing and voluntary, and therefore the 25 years-to-life term: (a) violates the plea agreement; (b) arose from constitutionally ineffective assistance of counsel; (c) violates his equal protection rights; and (d) violates his right to be free from cruel and unusual punishment. (Id. at 6-6b [ECF No. 1 at 6-8].)

Respondent has filed an Answer and lodged portions of the state court record. (ECF Nos. 10, 12.) Respondent argues that habeas relief is unavailable because the sole claim in the Petition is procedurally defaulted, and is not cognizable as it relies on pre-plea constitutional violations. (Memorandum of Points and Authorities in Support of Answer ["Ans. Mem."] at 3-8 [ECF No. 10-1 at 9-14].) Respondent alternately contends that if the Court reaches the merits of the claim, relief is unavailable because the state court adjudication of the claim, on the basis that the enhancement contains no gang involvement element, is neither contrary to, nor involves an unreasonable application of, clearly established federal law. (Id. at 8-11 [ECF No. 10-1 at 14-17].)

Respondent has also filed a Motion for Leave to Assert Procedural Defaults in the Answer, requesting permission to raise the procedural default defense in an answer rather than in a motion to dismiss. (ECF No. 11.) Respondent reads this Court's November 14, 2016 Order directing a response to the Petition as requiring that any procedural default defense be raised in a motion to dismiss rather than an answer, and seeks to be relieved of that requirement because the Petition raises a single claim which was denied in state court on procedural grounds and the merits. (Id. at 1-2.) Petitioner has not filed a Traverse.

For the following reasons, the Court finds that Respondent may assert a procedural default defense in the Answer and recommends granting Respondent's Motion. The Court also finds that the interests of judicial economy counsel in favor of reaching the merits of Petitioner's claim rather than determining whether it is procedurally defaulted, and that federal habeas relief is unavailable because Petitioner has failed to show that the state court adjudication of the claim is contrary to, or involves an unreasonable application of, clearly established federal law, or that it is based on an unreasonable determination of the facts. The Court therefore recommends the Petition be denied.

## I. **PROCEDURAL BACKGROUND**

In a five-count amended information filed in the San Diego County Superior Court on April 27, 2015, Petitioner was charged with attempted murder in violation of California Penal Code § 187(a) and 664 (count one), assault with a firearm in violation of Penal Code § 245(a)(2) (count two), attempted robbery in violation of Penal Code §§ 211 and 644 (count three), possession of a firearm by a felon in violation of Penal Code § 29800(a)(1) (count four), and possession of ammunition by a person prohibited from possessing ammunition in violation of Penal Code § 30305(a)(1) (count five). (Lodgment No. 2 at 1-3 [ECF No. 12-2 at 1-3].) With respect to counts one and three, it was alleged that Petitioner personally discharged a semi-automatic handgun and proximately caused great bodily injury to the victim within the meaning of Penal Code § 12022.53(d), that he intentionally discharged a firearm within the meaning of Penal Code § 12022.53(c), and that he personally inflicted great bodily injury upon the victim within the meaning of Penal Code § 12022.7(a). (Id. at 2-3.) With respect to count two, the information alleged that Petitioner personally used a handgun within the meaning of Penal Code § 12022.5(a), and personally inflicted great bodily injury on the victim within the meaning of Penal Code § 12022.7(a). (Id. at 2.)

Petitioner entered a guilty plea to count one and admitted the truth of the Penal Code § 12022.53(d) enhancement as to that count.[1] (Lodgment No. 3.) The plea agreement included a stipulated sentence of 32 years-to-life in state prison. (Id. at 1 [ECF No. 12-3 at 1].) Petitioner initialed the boxes on the change of plea form acknowledging and waiving his constitutional rights. (Id. at 1-3 [ECF No. 12-3 at 1-3].) The trial judge confirmed with Petitioner on the record that he understood those rights and freely waived them in order to

---

[1] That section provides: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), Section 246 [shooting at an inhabited vehicle], or subdivision (c) or (d) of Section 26100 [shooting from a vehicle], personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7 ["a significant or substantial physical injury"], or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." Cal. Penal Code § 12022.53(d) (West 2012).

plead guilty. (Lodgment No. 5, Reporter's Tr. ["RT"] at 4-5 [ECF No. 12-5 at 5-6].) As relevant here, immediately after Petitioner pled guilty, he answered "yes" when asked by the judge: "And do you admit that it is true under 12022.53 that you intentionally discharged a firearm and this caused great bodily injury to the person that you shot at; do you admit that's true?" (RT at 5 [ECF No. 12-5 at 6].) On June 5, 2015, Petitioner was sentenced to 7 years-to-life on the attempted murder count, and received a consecutive term of 25 years-to-life on the firearm use enhancement. (Lodgment No. 6 at 3 [ECF No. 12-6 at 3].) He did not appeal.

On December 15, 2015, Petitioner filed a pro se habeas petition in the state superior court claiming that the trial court failed to properly advise him of his right to counsel, his privilege against self-incrimination, his right to confront witnesses, his right to a jury trial, and the direct consequences of his guilty plea, that defense counsel was ineffective, and that the gang involvement element of the enhancement was not pled or proved. (Lodgment No. 7.) The superior court denied the petition after finding that the record clearly showed that Petitioner had been properly advised of his rights and had personally waived them on the record, but did not address the gang involvement or ineffective assistance aspects of the claim. (Lodgment No. 8.) On March 8, 2016, Petitioner filed a pro se habeas petition in the appellate court raising the same claims. (Lodgment No. 9.) The appellate court denied relief on the basis that Petitioner could have raised his failure to be advised of his rights claim on direct appeal if he had obtained a certificate of probable cause, but did not do so, and was not permitted to avoid that requirement through habeas. (Lodgment No. 10.) The court alternatively held that the claim was frivolous because the transcript of the plea hearing clearly showed Petitioner "received the advisements regarding his trial rights and the consequences of a guilty plea and then made the waivers, as required for a valid guilty plea." (Id. at 1-2 [ECF No. 12-10 at 1-2].) The court did not address the gang element and ineffective assistance of counsel aspects of the claim. (Id.)

Rather than proceed to the state supreme court, Petitioner began a new round of state habeas by filing a second pro se habeas petition in the superior court on March 25, 2016,

claiming his 25 years-to-life sentence was illegal because the enhancement required a gang involvement element which was neither charged nor proved, and again sought to withdraw his guilty plea because he had not been informed of his constitutional rights. (Lodgment No. 11.) The court denied relief because the firearm use enhancement did not contain a gang involvement element, and the claim of not having been informed of his constitutional rights had been raised and rejected in his prior petition. (Lodgment No. 12.)

On June 6, 2016, Petitioner filed a pro se habeas petition in the appellate court claiming that the firearm use allegation contained a gang involvement element which had not been pled or proved. (Lodgment No. 13.) The court denied relief because the claim could have been but was not raised on direct appeal, and could have been but was not raised in the first state habeas petition. (Lodgment No. 14.) The court alternately held that even if the claim was not procedurally barred it was without merit because the firearm use enhancement did not contain a gang involvement element. (Id.)

On July 8, 2016, Petitioner filed a pro se habeas petition in the state supreme court in which he presented the same claim raised here, and argued that any state procedural bar should be excused. (Lodgment No. 15.) That court denied the petition in an order which stated: "The petition for writ of habeas corpus is denied." (Lodgment No. 16.)

## II. UNDERLYING FACTS

The following description of the crime is taken from the probation officer's report, which in turn relied on the preliminary hearing transcript and a police report:

> On 06/12/14 at approximately 1330 hours, police responded to a radio call of a shooting that occurred in the east alley at 4000 Ohio Street. When officers arrived on scene, they found the 62 year [old] victim, Yong Smith, lying on the ground in the alley. She suffered a gunshot wound to her right shoulder.
>
> Through investigation, police learned the victim went to her mother's house to pick her up and take her to the dentist. She parked in the alley, went inside to get her mother and then returned to her vehicle. After she placed her mother in the back seat of her car, she walked around the rear of the vehicle to the trunk to get her mother's dental records. At that time, a male and a female pulled up next to the victim's vehicle in a 2004 Trailblazer. The male,

later identified as the defendant, asked the victim for directions to a coffee shop in the area. The victim was not familiar with the coffee shop but gave the defendant directions to the nearest intersection where the coffee shop was located. After the victim gave the defendant the directions, she turned back toward her vehicle, assuming their conversation had ended. The defendant then exited his vehicle, approached the victim and whispered in her ear, "give me your freaking purse." The victim looked down and saw the defendant holding what she believed to be a fake gun or taser gun. The victim ran northbound toward a trashcan when she heard the gunshot and felt immediate pain to her right shoulder. The victim fell to the ground screaming in pain while the defendant got into his vehicle and drove away. Paramedics responded and transported the victim to the hospital. Doctors informed police the bullet entered the victim's right shoulder, went through her humerus bone and out the front of her shoulder. The injury required surgery.

Various individuals in the neighborhood heard the gunshot. A few witnesses saw the defendant's vehicle leave the area. One witness was able to provide police with the first three characters of the defendant's license plate. On 06/16/14, police received information from an anonymous source who named the defendant as the shooter and reported he fled to Mexico after the crime. The anonymous person provided police with the defendant's vehicle information. That same day, the victim identified the defendant as the shooter during a photo line-up. She also identified the female passenger as Mariela Ozua, the defendant's wife. Later that day, police detained the defendant at the Otay Mesa point of entry as he entered into the United States from Mexico with his brother.

Following admonishment, the defendant told police he took his wife to Mercy Hospital that day and only had $4. When they left the hospital, the defendant had to pay $2 for parking. He said his wife was upset because she had no idea how they were going to feed their children with no money. He saw the victim who drove a nice vehicle. He decided to stop and ask the victim for directions then snatch her purse. When he exited his vehicle and confronted the victim, she ran in an attempt to get away and he "pulled the trigger." He claimed he had the firearm pointing down and tried to fire the weapon into the ground. He knew he injured the victim because he heard her screaming. He got into his vehicle and drove away. He told police he hid the firearm in a bush behind his residence in Tijuana, Mexico. He wrote the victim an apology letter.

(Lodgment No. 1 at 2-3 [ECF No. 12-1 at 2-3].)

## III. DISCUSSION

Petitioner claims his 25 years-to-life sentence on the firearm use enhancement is void because the gang involvement element necessary to support the enhancement was not pled or proved, and therefore his guilty plea was not knowing and voluntary. (Pet. at 6-6b [ECF No. 1 at 6-8].) He contends his sentence on the enhancement therefore violates the plea agreement, arose from constitutionally ineffective assistance of counsel, and violates his rights to equal protection and to be free from cruel and unusual punishment. (Id.)

Respondent answers that the claim is procedurally defaulted because the state court denied it on the basis that it was not raised on appeal and was raised in a successive petition, and argues that it is not cognizable on federal habeas because it relies on allegations of pre-plea constitutional violations. (Ans. Mem. at 3-8 [ECF No. 10-1 at 9-14].) Respondent alternately contends that, to the extent the Court reaches the merits of the claim, habeas relief is unavailable because the state court adjudication is neither contrary to, nor involves an unreasonable application of, clearly established federal law. (Id. at 8-11 [ECF No. 10-1 at 14-17].) Respondent has also filed a Motion for leave to present the procedural default defense in the Answer rather than a motion to dismiss. (ECF No. 11.)

### A. Procedural Default

Before addressing the procedural default issue, Respondent has filed a Motion for Leave to Assert Procedural Defaults in the Answer. (ECF No. 11.) Respondent requests permission to raise the issue of procedural default in the Answer, rather than a motion to dismiss, notwithstanding this Court's November 14, 2016 Order directing a response to the Petition, which indicated that if Respondent filed a motion to dismiss the motion must address all procedural defenses, and not the merits of the claim, which must be addressed in an answer. (See ECF No. 6 at 2.) Respondent argues that judicial economy supports combining the two in an answer because the only claim in the Petition was denied in the state court both on procedural grounds and on the merits. (Id. at 1-2.)

"[T]he defense of procedural default should be raised in the first responsive pleading in order to avoid waiver." Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005)

(noting that a motion to dismiss is not a responsive pleading), citing <u>United States v. Valdez</u>, 195 F.3d 544, 548 (9th Cir. 1999) (holding that a procedural default defense is not waived by failing to raise it in a motion to dismiss), abrogated on other grounds by <u>Dodd v. United States</u>, 545 U.S. 353 (2005); <u>see also</u> Rule 5(b), Rules foll. 28 U.S.C. § 2254 ("The answer must . . . state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations.") Because the Court's Order directing a response did not require a motion to dismiss, but merely informed Respondent that if a motion to dismiss was filed it must include all procedural defenses, and because Respondent is required to raise any procedural default defense in the Answer, the Court recommends granting Respondent's Motion and permitting the procedural default defense to be raised in the Answer.

In order to preclude federal habeas review based on a procedural default, a state procedural bar must rest on a state ground which is "independent" of federal law and "adequate" to forever bar federal review. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 (1991). To be "independent" the state law basis for the decision must not be interwoven with federal law. <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983). In order to be "adequate," the state procedural bar must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." <u>Calderon v. Bean</u>, 96 F.3d 1126, 1129 (9th Cir. 1996).

Respondent has the initial burden of pleading as an affirmative defense that a failure to satisfy a state procedural rule forecloses federal review. <u>Bennett v. Mueller</u>, 322 F.3d 573, 586 (9th Cir. 2003). The burden then shifts to Petitioner to challenge the independence or adequacy of the procedural bar, and if Petitioner does so, the ultimate burden of proof falls on Respondent. <u>Id.</u> This Court may still reach the merits of a defaulted claim if Petitioner demonstrates cause for the failure to object and prejudice from the default, or where a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claim. <u>Coleman</u>, 501 U.S. at 750.

///

Petitioner filed a pro se habeas petition in the state supreme court in which he raised the same claim he presents here. (Lodgment No. 15.) His claim was predicated on the contention that the gang involvement element necessary to support the firearm use enhancement had not been pled or proved, and argued that his claim should not be procedurally barred under state law. (Id. at 3-3(d) [ECF No. 12-15 at 3-7].) That petition was denied by an order which stated: "The petition for writ of habeas corpus is denied." (Lodgment No. 16, In re Ozua, No. S235741, order at 1 (Aug. 31, 2016).) Prior to that petition, Petitioner filed a pro se habeas petition in the state appellate court. (Lodgment No. 13.) Petitioner claimed in that petition, as he did in the state supreme court, that the failure to plead and prove the gang involvement element of the firearm use enhancement rendered his sentence on the enhancement invalid because he was not given notice of that element, which therefore rendered his plea agreement fraudulent, and he again argued that any state procedural bars should be excused. (Id. at 3-3c, 4-4a [ECF No. 12-13 at 3-8].)

The state appellate court, before addressing the merits of the claim in an alternate holding, stated:

> Ozua is not entitled to habeas corpus relief. His challenge to the firearm enhancement is barred because it could have been raised on direct appeal had he obtained the certificate of probable cause required by Penal Code section 1237.5 to challenge the validity of his guilty plea, and he may not avoid that requirement by attacking the plea by petition for writ of habeas corpus. (*In re Chavez* (2003) 30 Cal.4th 643, 651; *In re Brown* (1973) 9 Cal.3d 679, 682-683.) The challenge is further barred because it could have been asserted in Ozua's prior petition for writ of habeas corpus, but was not. (*In re Reno* (2012) 55 Cal.4th 428, 501; *In re Horowitz* (1949) 33 Cal.2d 534, 546-547.) "In this state a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him." (*In re Connor* (1940) 16 Cal.2d 701, 705.) Ozua's "failure to affirmatively address the applicability of procedural obstacles to consideration of the claims raised in (his) habeas corpus petition justifies summary denial without the court's consideration of the merits." (*In re Reno*, *supra*, at p. 511.)

(Lodgment No. 14, In re Ozua, No. D070428, slip op. at 2 (Cal.App.Ct. June 8, 2016).)

There is a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991); see also Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005) ("Before we can apply [the] standards [of 28 U.S.C. § 2254(d)], we must identify the state court decision that is appropriate for our review.  When more than one state court has adjudicated a claim, we analyze the last reasoned decision.")  There is also a presumption that a silent denial by a state supreme court is an adjudication on the merits, which "may be overcome when there is reason to think some other explanation of the state court's decision is more likely." Harrington v. Richter, 562 U.S. 86, 99-100 (2011), citing Ylst, 501 U.S. at 803.

The fact that the state appellate court alternately reached the merits of the claim does not preclude a finding that the state supreme court adopted the procedural ruling, because "a state court need not fear reaching the merits of a federal claim in an *alternative* holding. . . . In this way, a state court may reach a federal question without sacrificing its interest in finality, federalism, and comity." Harris v. Reed, 489 U.S. 255, 264 n.10 (1989). "State procedural bars are not immortal, however, they may expire because of later actions by state courts.  If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." Ylst, 501 U.S. at 801, citing Harris, 489 U.S. at 262-63 ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks omitted).

Petitioner presented his claim in the superior and appellate courts in his first round of state habeas petitions, and received the state procedural bar against raising a claim on habeas which should have been raised on appeal.  However, he did not file a petition in the state supreme court in that first round of state habeas proceedings, but pursued another round in the superior and appellate courts, perhaps because they had ignored the claim he raises here that the gang involvement element of the enhancement was not pled or proved.

It was in that second round that he received the additional state procedural bar of presenting his claim in a successive petition. Respondent contends that both state procedural rules are independent of federal law and adequate to support the judgment. (Ans. Mem. at 4-7 [ECF No. 10-1 at 10-13].)

However, the state appellate court erred in finding that Petitioner had not raised his claim regarding the failure to plead and prove the gang involvement element of the enhancement in the first round of state habeas petitions. He presented that claim in the first superior court habeas petition (see ECF No. 12-7 at 13), and in his first appellate court petition (ECF No. 12-9 at 16). Thus, Respondent has not sufficiently alleged that the state procedural bar against successive petitions prevents this Court from addressing the claim. See e.g. Walker v. Martin, 562 U.S. 307, 320 (2011) ("A state ground, no doubt, may be found inadequate when discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law.") (internal quotation marks omitted); Lee v. Kemma, 534 U.S. 362, 376 (2002) (recognizing exception to bar on federal review where "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.")

Respondent has sufficiently alleged that the procedural bar regarding Petitioner's failure to present his claim on direct appeal bars his claim, and the burden has shifted to Petitioner to challenge the independence and adequacy of that procedural bar. Bennett, 322 F.3d at 586. Petitioner has not attempted to do so here, but argued in state court that the default should not apply to his claim because there is a well-recognized exception for claims alleging fundamental errors, such where the state court entered judgment in excess of its jurisdiction, or a structural error such as when a defendant is abandoned by counsel. (Lodgment No. 11 at 3-3d [ECF No. 12-11 at 3-7]; Lodgment No. 15 at 3b [ECF No. 12-15 at 5].) Because Petitioner did in fact argue that his failure to raise the claim on direct appeal should be excused, to the extent the appellate court was not commenting on the veracity of his argument that the default should be excused, the appellate court incorrectly found that his "failure to affirmatively address the applicability of procedural obstacles to

consideration of the claims raised in (his) habeas petition justifies summary denial without the court's consideration of the merits." (Lodgment No. 14 at 2 [ECF No. 12-14 at 2].) Nevertheless, the adequacy of a state procedural rule "is not within the State's prerogative finally to decide; rather, adequacy 'is itself a federal question.'" Lee, 534 U.S. at 375, quoting Douglas v. Alabama, 380 U.S. 415, 422 (1965). The Ninth Circuit has found that the failure to obtain a certificate of probable cause to appeal a guilty plea in California state court is an adequate and independent procedural ground for purposes of a federal procedural default. Strong v. Sullivan, 265 Fed.Appx. 489, 490 (9th Cir. 2008). Thus, to the extent this procedural bar was properly applied, Petitioner must demonstrate cause and prejudice to excuse the default, or show that a fundamental miscarriage of justice would result from the failure to reach the merits of his claim. Coleman, 501 U.S. at 750.

Even if federal habeas review of the claim is foreclosed due to a default with respect to most of the aspects of Petitioner's claim, the Court would be required to determine whether the ineffective assistance of counsel aspect of the claim is "substantial," because Petitioner raised it in state court while proceeding pro se. See Martinez v. Ryan, 566 U.S. 1, 18 (2012) ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was not counsel or counsel in that proceeding was ineffective.") The merits of the claim must also be addressed in order to determine whether Petitioner can show prejudice arising from the default, as well as to determine the validity of his allegation that an element of the offense was not pled and proved. White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989) (holding that a petitioner can demonstrate prejudice to overcome a default by showing "that the errors . . . worked to his actual and substantial disadvantage, infecting the entire [proceeding] with errors of constitutional dimension."); Vosgien v. Persson, 742 F.3d 1131, 1134 (9th Cir. 2014) ("One way a petitioner can demonstrate actual innocence [sufficient to overcome a procedural bar] is to show . . . that he cannot, as a legal matter, have committed the alleged crime.")

Thus, in order to determine if federal review is foreclosed here, the Court must determine: (1) whether the silent denial by the state supreme court should be presumed: (a) to be a decision on the merits under Richter, (b) as having adopted the state appellate court's (apparently erroneous) finding that the claim is defaulted as successive, (c) as having adopted the appellate court's (apparently erroneous) finding that the claim is defaulted due to Petitioner's failure to argue that the default for failing to raise the claim on appeal should be excused, or (d) as having adopted the appellate court's alternate merits holding; (2) whether Petitioner's ineffective assistance of counsel claim is substantial as required to overcome the procedural bar under Martinez; and (3) whether Petitioner can overcome the procedural default by showing cause and prejudice or the existence of a fundamental miscarriage of justice.  The Ninth Circuit has indicated that: "Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same."  Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.")

As set forth below, Petitioner's claim clearly fails on the merits because the sentence enhancement which he admitted during his guilty plea does not contain a gang involvement element.  The Court finds that the interests of judicial economy support addressing the merits of Petitioner's claim without determining whether it is procedurally defaulted.

**B.  Merits**

In order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d) (West 2006).  Even if § 2254(d) is satisfied, or does not apply, a

petitioner must still show a federal constitutional violation occurred in order to obtain relief. Fry v. Pliler, 551 U.S. 112, 119-22 (2007); Frantz v. Hazey, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. ___, 134 S.Ct. 1697, 1706-07 (2014), quoting Richter, 562 U.S. at 103. In order to satisfy § 2254(d)(2), the petitioner must show that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Petitioner claims here, as he did in state court, that there was a failure to plead and prove the gang involvement element of the firearm use enhancement. (Pet. at 6-6b [ECF No. 1 at 6-8].) The last reasoned opinion addressing this claim is the appellate court opinion denying Petitioner's second habeas petition, which stated:

> Even if Ozua's petition were not procedurally barred, it would fail on the merits. At the plea hearing, Ozua pleaded guilty to attempted murder and "admit(ted) that it is true under (Penal Code section) 12022.53 that (he) intentionally discharged a firearm and this caused great bodily injury to the person that (he) shot at." That admission was sufficient to subject him to the enhancement of 25 years to life imposed by the trial court. (Pen. Code, § 12022.53, subds. (a)(1), (18) (section applies to attempted murder), (d) ("any person who, in the commission of a felony specified in subdivision (a), . . . personally discharges a firearm and proximately causes great bodily injury

>. . . shall be punished by an additional and consecutive term of imprisonment in the state prison of 25 years to life.").) No pleading or proof the shooting was done to promote a criminal street gang was required to impose the enhancement.

(Lodgment No. 14, In re Ozua, No. D070428, slip op. at 2.)

Clearly established federal law provides that a guilty plea must be voluntary and intelligent, that is, the defendant must enter the plea with full awareness of its "direct consequences." Brady v. United States, 397 U.S. 742, 747-55 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969) (requiring the record to reflect the defendant understands, and is voluntarily waiving, his rights). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Parke v. Raley, 506 U.S. 20, 29 (1992), quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970).

Before turning to the merits, Respondent contends the claim is not cognizable on federal habeas under Tollett v. Henderson, 411 U.S. 258 (1973), because it relies on pre-plea constitutional violations. (Ans. Mem. at 7-8 [ECF No. 10-1 at 13-14].) The Supreme Court stated in that case:

> We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [substandard].

Tollett, 411 U.S at 267.

Petitioner contends the aspect of his guilty plea which included an admission to the California Penal Code § 12022.53 enhancement was not knowing and voluntary due to the failure to plead and prove the gang involvement element of the enhancement, and that his defense counsel allowed him to plead guilty to an enhancement for which he was not and could not be guilty because he was not acting for the benefit of, at the direction of, or in

association with a criminal street gang as required by the enhancement. (Pet. at 6-6b [ECF No. 1 at 6-8].) Petitioner is not attacking constitutional violations which occurred prior to his plea, but is attacking the voluntary and intelligent nature of his plea, as he did in state court. Thus, the Court recommends rejecting Respondent's contention that Petitioner's claim is barred by Tollett. See Custis v. United States, 511 U.S. 485, 508 (1994) (a guilty plea may be found to be not knowing and voluntary if it is the product of "ignorance" or "incomprehension."); Menna v. New York, 423 U.S 62, 63 n.2 (1975) ("The point of [the Brady trilogy] is that a counseled plea of guilty is an admission of actual guilt so reliable that, when voluntary and intelligent, it quite validly removes the issue of factual guilt from the case.") (emphasis added); Tollett, 411 U.S. at 266 ("The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity.")

Petitioner argues here, as he has throughout the state proceedings, that his guilty plea included an admission to California Penal Code § 12022.53(e)(1), which provides:

> "The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved: (A) The person violated subdivision (b) of Section 186.22. (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d)."

Cal. Penal Code § 12022.53(e)(1) (West 2012); see also Cal. Penal Code § 186.22(b) (providing for additional terms of punishment for persons convicted of a felony which was committed for the benefit of, at the direction of, or in association with any criminal street gang). Petitioner apparently reads the language in § 12022.53(e) which states "if both of the following are pled and proved," as stating "if and only if both of the following are plead and proved." Such an interpretation would not only read out all the other provisions in the statute, but ignores the distinction between the application of § 12022.53(e) to: "Any principal in the offense [who] committed any act specified in [§ 12022.53(b), (c) or (d)]," and, as in Petitioner's case, the actual perpetrator of an act specified in § 12022.53(b), (c)

///

or (d).  See e.g. People v. Favor, 54 Cal.4th 868, 874 (2012) (acknowledging distinction between principal and perpetrator under California criminal law).

The charging document clearly alleged that Petitioner violated § 12022.53(d), and it sufficiently informed Petitioner of that charge by alleging that in the commission or attempted commission of attempted murder, he "intentionally and personally discharged a firearm, to wit: a semi-automatic handgun, and proximately caused great bodily injury and death to a person (other than an accomplice), within the meaning of penal code section 12022.53(d)."  (Lodgment No. 2 at 1-2 [ECF No. 12-2 at 1-2].); see Cal. Penal Code § 12022.53(d) (providing for an enhancement to any person who, in the commission of attempted murder, "personally and intentionally discharges a firearm and proximately causes great bodily injury, . . . , or death, to any person other than an accomplice.")  The change of plea form contains Petitioner's initials in a box indicating he admitted violating § 12022.53(d) as part of his plea.  (Lodgment No. 3 at 1 [ECF No. 12-3 at 1].)  The plea colloquy indicates that Petitioner admitted "that it is true under § 12022.53 that you intentionally discharged a firearm and this caused great bodily injury to the person that you shot at."  (RT at 5 [ECF No. 12-5 at 6].)

Although the trial judge omitted the precise subsection of § 12022.53 during the plea colloquy, it is obvious from the context of the colloquy, and is specified in the charging document and the change of plea form.  On the other hand, there is nothing in the record whatsoever to indicate Petitioner was charged with or admitted violating § 12022.53(e). Thus, there is no basis to support Petitioner's contention that he was charged with, or admitted, shooting the victim for the benefit of, at the direction of, or in association with a criminal street gang within the meaning of § 12022.53(e), rather than having personally and intentionally discharged a firearm which caused great bodily injury to the victim within the meaning of § 12022.53(d).

Accordingly, the Court finds that the state appellate court's adjudication of Petitioner's claim that his admission of the enhancement was not knowing and voluntary because the gang involvement element was not pled and proved, is neither contrary to, nor

involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Woodall, 134 S.Ct. at 1706-07; Richter, 562 U.S. at 103; Miller-El, 537 U.S. at 340; Taylor, 529 U.S. at 405-06; Custis, 511 U.S. at 508; Parke, 506 U.S. at 29; Marshall, 459 U.S. at 437; Brady, 397 U.S. at 747-55; Boykin, 395 U.S. at 242; Alford, 400 U.S. at 31. Because that is the only predicate for Petitioner's claim and it has not been established, and because Petitioner alleges no other basis for the invalidity of his plea or admission, there is no merit to his contentions that, for the same reason, the imposition of the 25 years-to-life sentence on the enhancement violated the plea agreement, the Sixth Amendment, his equal protection rights, constituted ineffective assistance of counsel, or amounted to cruel and unusual punishment. The Court recommends the Petition be denied.

## IV.   CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, (2) granting Respondent's Motion for Leave to Assert Procedural Defaults in the Answer, and (3) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **April 21, 2017**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **May 1, 2017.** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated:  March 28, 2017

Hon. Nita L. Stormes
United States Magistrate Judge